IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| MONICA MILLER and SUZANNE ABDALLA, <br><br> Plaintiffs, <br><br> v. <br><br> LETITIA JAMES, individually and in her official capacity as Attorney General of the State of New York, <br><br> Defendant. | No. <u>1:23-cv-820</u> (LEK/ DJS) <br><br> **COMPLAINT** <br><br> DEMAND FOR JURY TRIAL |

Plaintiffs Monica Miller and Suzanne Abdalla ("Plaintiffs"), by and through undersigned counsel, bring this Complaint against Defendant Letitia James, her employees, agents, and successors in office, and in support thereof allege the following upon information and belief:

### INTRODUCTION

1.      This case seeks to protect and vindicate fundamental constitutional rights. It is a civil rights action brought under the First and Fourteenth Amendments to the United States Constitution and 42 U.S.C. § 1983, challenging Defendant James' actions, which weaponize her office and authority as the chief law enforcement officer of the State of New York to defame, falsely label, and target peaceful pro-life demonstrators as "terrorists."

2.      In addition to violating Plaintiffs' rights secured by the United States Constitution, Defendant James' public statements that Plaintiffs are "terrorists" and that Red Rose Rescue is a "terrorist group" are defamation *per se* as a matter of New York law. Under the facts and circumstances of this case, Defendant James does not enjoy immunity for her defamatory remarks, which were made with actual malice, hatred, ill will, and spite, and for the

- 1 -

unlawful purpose of violating the constitutional rights of peaceful pro-life demonstrators, including Plaintiffs.

3.      Defendant James' targeting of pro-life demonstrators, including Plaintiffs, for disfavored treatment based on their religious beliefs and viewpoints causes irreparable harm to Plaintiffs and others who associate with and support Red Rose Rescue, in violation of the First and Fourteenth Amendments.

4.      Plaintiffs seek a declaration that by falsely labeling Plaintiffs as "terrorists" and Red Rose Rescue as a "terrorist group," Defendant James violated Plaintiffs' clearly established constitutional rights as set forth in this Complaint.  Plaintiffs seek a permanent injunction enjoining Defendant James' unlawful conduct.  Plaintiffs seek an award of damages under New York law against Defendant James in her individual and personal capacity for her defamatory remarks.  And Plaintiffs seek an award of attorneys' fees and costs pursuant to 42 U.S.C. § 1988, and other applicable laws.

## JURISDICTION AND VENUE

5.      This action arises under the Constitution and laws of the United States. Jurisdiction is conferred on this Court pursuant to 28 U.S.C. §§ 1331 and 1343.  This Court has supplemental jurisdiction over Plaintiffs' state law claim pursuant to 28 U.S.C. § 1367(a). Additionally, this Court has jurisdiction over Plaintiffs' state law claim pursuant to 28 U.S.C. § 1332 as there is complete diversity of citizenship and the amount in controversy exceeds $75,000.

6.      Plaintiffs' claims for declaratory and injunctive relief are authorized by 28 U.S.C. §§ 2201 and 2202, by Rules 57 and 65 of the Federal Rules of Civil Procedure, by *Ex parte Young*, 209 U.S. 123 (1908), and by the general legal and equitable powers of this Court.

7.     Plaintiffs' claim for an award of their reasonable costs of litigation, including attorneys' fees and expenses, is authorized by 42 U.S.C. § 1988 and other applicable law.

8.     Venue is proper under 28 U.S.C. § 1391(b) because Defendant James and the Office of the Attorney General of the State of New York are located in this judicial district and a substantial part of the events or omissions giving rise to Plaintiffs' claims occurred in this district.

## PARTIES

9.     Plaintiff Monica Miller is an adult citizen of the United States and a resident of Michigan.  She is Roman Catholic and a pro-life advocate who engages in peaceful, non-violent, and non-obstructive activities in defense of innocent human life.  Plaintiff Miller engages in these activities as part of Red Rose Rescue.  Plaintiff Miller also provides financial support to Red Rose Rescue.

10.    Plaintiff Miller is pro-life based on her sincerely held religious beliefs.  Her pro-life activities described in this Complaint are religiously motivated.

11.    Plaintiff Miller's pro-life activities include praying, distributing literature, holding pro-life signs, and counselling women on public sidewalks outside of abortion centers throughout the United States.  These activities are fully protected by the First and Fourteenth Amendments.

12.    At times, Plaintiff Miller has participated in Red Rose Rescues and entered abortion centers to be a peaceful witness in defense of life.  During a Red Rose Rescue, including those in which Plaintiff Miller has participated, the rescuers never use or threaten the use of force or violence nor have they ever engaged in any physical obstruction.  Such actions

are contrary to the purpose of a Red Rose Rescue as Red Rose Rescue makes it a point of emphasis to not engage in any conduct that is proscribed by FACE or its state law counterpart.

13.     During trials in which Plaintiff Miller was prosecuted for engaging in a Red Rose Rescue, particularly including those instances known by Defendant James and referenced in the recent civil complaint she filed against Red Rose Rescue and others in the U.S. District Court for the Southern District of New York on June 8, 2023, the trial transcripts demonstrate without exception that Plaintiff Miller never engaged in any conduct proscribed by FACE or any state law counterpart.  Defendant James falsely conflates a Red Rose Rescue with conduct that may violate FACE or a state law counterpart, and she does so knowingly, willfully, and intentionally.

14.     Plaintiff Miller understands as a matter of biological fact and pursuant to her sincerely held religious beliefs that an unborn baby is a unique and distinct human life created by God in His image and likeness and that abortion is a violent act that causes the death of this innocent human life.  Plaintiff Miller abhors all violence, including the violence of abortion. Pursuant to her deeply held religious beliefs and in keeping with Christian principles, when engaging in her pro-life activities, Plaintiff Miller is peaceful, respectful, merciful, and loving at all times.  That is, she abides by Red Rose Rescue's code of conduct, which is publicly available at https://www.redroserescue.com/about.

15.     When engaging in her pro-life activities, Plaintiff Miller never engages in violence of any kind.  Christian non-violence is a pledge not to fight back, but to imitate Jesus in His Passion who offered no resistance to injury.

16.     Plaintiff Suzanne Abdalla is an adult citizen of the United States and a resident of Michigan.  She is Byzantine Catholic and a pro-life advocate who engages in peaceful, non-violent, and non-obstructive activities in defense of innocent human life.  Plaintiff Abdalla

engages in these activities as part of Red Rose Rescue.  Plaintiff Abdalla also provides financial support to Red Rose Rescue.

17.    Plaintiff Abdalla is pro-life based on her sincerely held religious beliefs.  Her pro-life activities described in this Complaint are religiously motivated.

18.    Plaintiff Abdalla's pro-life activities include praying, distributing literature, holding pro-life signs, and counselling women on public sidewalks outside of abortion centers throughout the United States.  These activities are fully protected by the First and Fourteenth Amendments.

19.    Plaintiff Abdalla is one of many pro-lifers who associate with Red Rose Rescue and who participate in and support a Red Rose Rescue but never enter an abortion center as part of the rescue.  Rather, she and others who are similarly situated remain on the public sidewalks offering assistance and support through prayer, holding pro-life signs, distributing pro-life literature, and counseling women who are planning on having an abortion.  This activity is fully protected by the First and Fourteenth Amendments to the U.S. Constitution.

20.    Plaintiff Abdalla has also spoken to the media on behalf of Red Rose Rescue.  Consequently, she is publicly known as someone who is associated with Red Rose Rescue.

21.    Plaintiffs have witnessed many situations where women were grateful for the pro-lifers' presence at the abortion centers.  The pro-lifers' peaceful presence and the assistance (spiritual, financial, and emotional) they provide to the women who are planning to have an abortion give the women the courage to reject the lies promoted by the abortion industry and those government officials who support that industry.  These women are forever grateful for choosing life for their babies and for protecting themselves as abortion harms women as well.

22.     Defendant Letitia James is the Attorney General of the State of New York and a resident of the State of New York.   The Attorney General is the state's top law enforcement official.

23.     As the Attorney General, Defendant James has the authority to investigate and prosecute terrorists.

24.     Defendant James harbors malice, hatred, ill will, and spite toward pro-lifers as she is a militant and radical supporter of abortion on demand at any time in the pregnancy. Ironically, Defendant James' extreme pro-abortion position makes her a staunch advocate of Planned Parenthood, which was founded by a racist who used abortion as a means of reducing the population of minorities, specifically including the black population.   Indeed, abortion disproportionally harms the black community even today.

25.     Many abortions are the result of coercion from the father or a family member as it is contrary to the natural, maternal instincts of a mother to kill the innocent life growing within her.   Yet, Defendant James turns a blind eye to coerced abortions, which is an unlawful assault upon the mother and her unborn baby.

26.     As set forth in this Complaint, Defendant James has disseminated false and defamatory information about Plaintiffs, which irreparably harmed Plaintiffs' interests and will continue to cause harm to Plaintiffs.   Absent relief from this Court, Defendant James will continue to take action that unlawfully designates and targets Plaintiffs as terrorists.

27.     Plaintiffs' claims arising under § 1983 are brought against Defendant James in her official capacity only.   Plaintiffs' defamation claim is brought against Defendant James personally.

## STATEMENT OF FACTS

28.     On or about June 8, 2023, Defendant James held a public press conference announcing a new *civil* lawsuit filed by the State of New York and the Attorney General against Red Rose Rescue, Christopher Moscinski, Matthew Connolly, William Goodman, Laura Gies, John Hinshaw, and John and Jane Does, alleging civil violations of the Freedom of Access to Clinic Entrances Act (FACE) (18 U.S.C. § 248) and the New York State version of this statute (the New York Clinic Access Act, N.Y. Civ. Rights Law § 79-m).  This civil lawsuit principally seeks a 30-foot buffer zone around abortion centers.

29.     The civil lawsuit contained no allegations of terrorism.  Consequently, Defendant James' defamatory statements were not a fair and true report of any judicial proceeding, legislative proceeding, or other official proceeding.

30.     Plaintiff Miller was not a named defendant in the lawsuit, but she was named in the allegations of the Complaint, and she was personally served with a copy of the Complaint as the agent for Red Rose Rescue.

31.     During the press conference, Defendant James labelled those who associate with Red Rose Rescue as "terrorists," and she labelled Red Rose Rescue a "terrorist group."  These false and defamatory remarks were of and concerning Plaintiffs as Plaintiffs are associated with Red Rose Rescue.

32.     Defendant James' false and defamatory statements were made and published in such a way that allows for easy identification of the individuals within the group, including Plaintiffs.  Thus, a reader/viewer/listener could reasonably understand that the false and defamatory statements about Red Rose Rescue include Plaintiffs.

33.     Defendant James' false and defamatory statements that those associated with Red Rose Rescue, which includes Plaintiffs, are "terrorists" and that Red Rose Rescue itself is a "terrorist group" are published on the Attorney General's website at https://ag.ny.gov/attorney-general-james-sues-militant-anti-abortion-group-invading-clinics-and-blocking-access and have been republished by multiple media sources, including, *inter alia*, the Washington Examiner (https://www.washingtonexaminer.com/policy/healthcare/new-york-ag-anti-abortion-terrorist-lawsuit), and the Washington Times (https://www.washingtontimes.com/news/2023/jun/8/letitia-james-sues-block-pro-life-terrorists-abort/).

34.     Defendant James held a public press conference, which in reality was a pro-abortion propaganda exercise, to ensure that her false and defamatory statements were widely reported and repeated as she intended these statements to cause harm to pro-lifers, including Plaintiffs.

35.     It is not part of her prosecutorial duties to hold press conferences to defame people who hold religious beliefs and views contrary to her own.  Defendant James' defamatory attack on pro-lifers had no legitimate governmental purpose.  Rather, it was an abusive use of government authority and power.  Indeed, it was an *ultra vires* exercise of power.

36.     Defendant James is the chief law enforcement officer of the State of New York. Consequently, she is in a position to know that Red Rose Rescue is not a "terrorist group" and that the pro-lifers who associate with Red Rose Rescue, including Plaintiffs, are not "terrorists." Indeed, if Defendant James had any facts to substantiate these false accusations of criminal activity, she would have brought a criminal complaint for engaging in terrorist activity and not a civil action seeking a 30-foot buffer zone.  Defendant James has not brought a criminal

complaint against Red Rose Rescue and those who associate with Red Rose Rescue for committing terrorism as no such facts exist to do so, and Defendant James knows it.

37.     Terrorism is a crime punishable under the New York Penal Law.  *See* N.Y. Penal Law §§ 490.00, *et seq*.  Indeed, terrorism is widely considered to be one of the most heinous criminal acts.  The legislative findings in support of New York's penal law proscribing terrorism emphasize this point:

> The devastating consequences of the recent barbaric attack on the World Trade Center and the Pentagon underscore the compelling need for legislation that is specifically designed to combat the evils of terrorism.  Indeed, the bombings of American embassies in Kenya and Tanzania in 1998, the federal building in Oklahoma City in 1995, Pan Am Flight number 103 in Lockerbie in 1988, the 1997 shooting atop the Empire State Building, the 1994 murder of Ari Halberstam on the Brooklyn Bridge and the 1993 bombing of the World Trade Center, will forever serve to remind us that *terrorism is a serious and deadly problem that disrupts public order and threatens individual safety both at home and around the world.  Terrorism is inconsistent with civilized society and cannot be tolerated.*
>
> Although certain federal laws seek to curb the incidence of terrorism, there are no corresponding state laws that facilitate the prosecution and punishment of terrorists in state courts.  Inexplicably, there is also no criminal penalty in this state for a person who solicits or raises funds for, or provides other material support or resources to, those *who commit or encourage the commission of horrific and cowardly acts of terrorism.*  Nor do our criminal laws proscribe the making of terrorist threats or punish with appropriate severity those who hinder the prosecution of terrorists.  Finally, our death penalty statute must be strengthened so that the cold-blooded execution of an individual for terrorist purposes is a capital offense.
>
> A comprehensive state law is urgently needed to complement federal laws in the fight against terrorism and to better protect all citizens against terrorist acts.  Accordingly, the *legislature finds that our laws must be strengthened to ensure that terrorists, as well as those who solicit or provide financial and other support to terrorists, are prosecuted and punished in state courts with appropriate severity.*

N.Y. Penal Law § 490.00 (emphasis added).  As the New York Attorney General, Defendant James is well aware of the New York penal law and its harsh treatment of terrorism.

38.     Falsely labeling a person or group of persons a "terrorist" or a "terrorist group" is defamatory *per se*.

39.     With no sense of tragic irony, Defendant James largely ignores the *violent* crime that is ravaging New York, and she has failed to take any legal action against the *violent* acts committed by Antifa and the Black Live Matter movement, but yet she weaponizes her office to target peaceful pro-lifers because she is a pro-abortion extremist and pro-lifers are her opponents while Antifa and Black Lives Matter are her allies.

40.     As set forth in this Complaint, Defendant James' public dissemination of false information about Plaintiffs is injurious to Plaintiffs' interests, which has caused and will continue to cause irreparable harm to Plaintiffs and their public reputation.  These false and defamatory statements also have a chilling effect on Plaintiffs' rights to freedom of speech and expressive association, and the defamatory statements have a chilling effect on the rights to freedom of speech and expressive association of other pro-lifers associated with Red Rose Rescue.

41.     Defendant James' actions as set forth in this Complaint were motivated by malice against pro-lifers, including Plaintiffs, and their religious objection to abortion, and they were made with hatred, ill will, and spite.  Defendant James will continue to disseminate false information about Plaintiffs unless enjoined from doing so by this Court.

42.     The false and defamatory statements by Defendant James have caused, and will continue to cause, irreparable harm to Plaintiffs.  Defendants James' false and defamatory statements have caused Plaintiffs to suffer humiliation and a loss of reputation.

43.     By branding religious opponents (pro-lifers) as "terrorists," Defendant James seeks to officially censor, correct, and/or condemn certain religious beliefs, views, and ideas.

44.     Defendant James' acts as set forth in this Complaint are designed to chill the exercise of constitutional rights by pro-lifers such as Plaintiffs and to chill those who would associate with Red Rose Rescue from exercising their constitutional rights.

45.     Defendant James' acts as set forth in this Complaint create a tool of intimidation for state government officials.  Defendant James' identification of pro-lifers as "terrorists" provides a basis for government officials to abuse their positions of power by seeking to stifle certain religious beliefs and views.  It also provides adversaries, such as Planned Parenthood and others pro-abortion extremists who were invited to participate in the press conference with Defendant James, with a government sponsored and endorsed basis for making and perpetuating false claims about pro-lifers, causing further harm to Plaintiffs.

46.     Defendant James' labeling of pro-lifers as "terrorists" creates a basis for government investigation, surveillance, punishment, condemnation, and other disfavored treatment, and it has tarnished Plaintiffs' public reputation and subjects Plaintiffs to public retribution.

47.     Defendant James' labeling of those who associate with Red Rose Rescue as "terrorists" is grotesque and absurd on its face; it is reckless in the extreme; it harms Plaintiffs' public reputation; and it is an unconstitutional dereliction of Defendant James' sworn duty to uphold the United States and New York Constitutions and to provide equal justice under the law to *all* persons and organizations regardless of their religious beliefs and views.

48.     The purposes and effects of Defendant James' actions are to silence religious opposition to the pro-abortion policies that she supports; to marginalize pro-lifers by officially and pejoratively labeling them as "terrorists"; to deter and diminish support for pro-lifers; and to provide a government-sanctioned justification for officials, including law enforcement officials,

to harass and target religious opponents, thereby creating a deterrent effect on religious-motivated speech and views and the expressive association of pro-lifers, including Plaintiffs.

49.    Defendant James' actions brand pro-lifers such as Plaintiffs as criminals on account of their religious beliefs and viewpoints, subjecting them to governmental scrutiny, investigation, surveillance, condemnation, and intimidation, which have a deterrent effect on Plaintiffs' constitutionally protected activities and their rights to freedom of speech and expressive association.

50.    Defendant James is engaged in a governmental attack on the reputation of pro-lifers, including Plaintiffs, that is designed to marginalize pro-lifers and their religious viewpoints.

51.    Defendants James' challenged actions as set forth in this Complaint have the purpose and effect of deterring pro-lifers from associating with Red Rose Rescue and those involved with Red Rose Rescue, including Plaintiffs, and deterring donors and volunteers from supporting the activities of Red Rose Rescue.  Defendant James' actions also legitimize the illegitimate attacks against pro-lifers in the public eye.  Consequently, the challenged actions harm Plaintiffs' constitutionally protected activities and interests.

52.    When Defendant James, the New York Attorney General, places pejorative labels on opponents who express religious beliefs and views contrary to those she espouses, she places the power of the state government, with its authority, presumed neutrality, and assumed access to all the facts, behind an appellation *designed* to reduce the effectiveness of the speech in the eyes of the public in violation of the First and Fourteenth Amendments.

53.    When it comes to the freedom of association, the protections of the First Amendment are triggered not only by actual restrictions on an individual's ability to join with

others to further shared goals.  The risk of a chilling effect on association is enough, because First Amendment freedoms need breathing space to survive.  Defendant James' actions as set forth in this Complaint have had a chilling effect on the right of association by deterring pro-lifers from associating with Red Rose Rescue, thereby causing harm to pro-lifers, including Plaintiffs.

54.     Defendant James' defamatory statements as set forth in the Complaint have caused harm to Plaintiffs such that Plaintiffs are entitled to damages, including punitive damages, against her personally.

**FIRST CLAIM FOR RELIEF**

**(First Amendment—Freedom of Speech)**

55.     Plaintiffs hereby incorporate by reference all stated paragraphs.

56.     By reason of the aforementioned acts engaged in under the color of state law and authority, Defendant James has deterred the exercise of Plaintiffs' right to freedom of speech in violation of the First Amendment as applied to the states and their political subdivisions under the Fourteenth Amendment to the United States Constitution and 42 U.S.C. § 1983.

57.     As a direct and proximate result of Defendant's violation of the First Amendment, Plaintiffs have suffered irreparable harm, including the loss of their constitutional rights and public reputation, entitling Plaintiffs to declaratory and injunctive relief.

**SECOND CLAIM FOR RELIEF**

**(First Amendment—Expressive Association)**

58.     Plaintiffs hereby incorporate by reference all stated paragraphs.

59.     By reason of the aforementioned acts engaged in under the color of state law and authority, Defendant James has deterred the exercise of Plaintiffs' right to expressive association

in violation of the First Amendment as applied to the states and their political subdivisions under the Fourteenth Amendment to the United States Constitution and 42 U.S.C. § 1983.

60.     As a direct and proximate result of Defendant's violation of the First Amendment, Plaintiffs have suffered irreparable harm, including the loss of their constitutional rights and public reputation, entitling Plaintiffs to declaratory and injunctive relief.

## THIRD CLAIM FOR RELIEF

### (Fourteenth Amendment—Equal Protection)

61.     Plaintiffs hereby incorporate by reference all stated paragraphs.

62.     By reason of the aforementioned acts engaged in under the color of state law and authority, Defendant James has deprived Plaintiffs of the equal protection of the law guaranteed under the Fourteenth Amendment to the United States Constitution and 42 U.S.C. § 1983 by targeting Plaintiffs for defamatory and disfavored treatment on account of Plaintiffs' religious viewpoint on abortion.

63.     As a direct and proximate result of Defendant's violation of the Fourteenth Amendment, Plaintiffs have suffered irreparable harm, including the loss of their constitutional rights and public reputation, entitling Plaintiffs to declaratory and injunctive relief.

## FOURTH CLAIM FOR RELIEF

### (Defamation—New York Law)

64.     Plaintiffs hereby incorporate by reference all stated paragraphs.

65.     As set forth in this Complaint, Defendant James made false statements that were published to a third party without authorization.  She made the statements with actual malice, hatred, ill will, and spite.  Indeed, Defendant James made the false statements with knowledge

that they were false or with reckless disregard of whether they were false or not.  These false statements harmed Plaintiffs' public reputation and constitute defamation *per se*.

66.     Defendant James' labelling Plaintiffs as "terrorists" and belonging to a "terrorist group" exposes Plaintiffs to hatred, contempt, and aversion, and it induces an evil and unsavory opinion in the minds of a substantial number of people in the community, causing irreparable harm to Plaintiffs' reputations.

67.     Defendant James' defamatory statements expose Plaintiffs to public contempt, ridicule, aversion and disgrace; they induce an evil opinion of Plaintiffs in the minds of right-thinking persons; and they deprive Plaintiffs of their friendly interactions in society.

68.     Defendant James falsely accused Plaintiffs of having committed the serious crime of terrorism.  Defendant James' false statements constitute defamation *per se*.

69.     As a direct and proximate result of Defendant James' defamatory statements, Plaintiffs have suffered irreparable harm, including the loss of their constitutional rights and public reputation, entitling Plaintiffs to declaratory and injunctive relief and damages.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs ask this Court:

A)     to declare that Defendant James' acts violated the First and Fourteenth Amendments to the United States Constitution as set forth in this Complaint;

B)     to permanently enjoin Defendant James from making any future and similarly false and defamatory statements about Plaintiffs and those who associate with Red Rose Rescue;

C)     to award Plaintiffs compensatory and punitive damages in the amount of $5,000,000 against Defendant James in her individual and personal capacity for defaming Plaintiffs;

D)      to award Plaintiffs their reasonable attorney fees, costs, and expenses pursuant to

42 U.S.C. § 1988, and other applicable law;

E)      to grant such other and further relief as this Court should find just and proper.

### DEMAND FOR JURY TRIAL

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiffs hereby demand

a trial by jury of all issues triable of right by a jury.

Respectfully submitted,

AMERICAN FREEDOM LAW CENTER

*/s/ David Yerushalmi*
David Yerushalmi, Esq. (NY Bar No. 4632568; DC Bar No.
978179; Cal. Bar No. 132011; Ariz. Bar No. 0096)
383 Kingston Avenue, Suite 103
Brooklyn, New York 11213
Tel: (646) 262-0500; Fax: (801) 760-3901
dyerushalmi@americanfreedomlawcenter.org

Robert J. Muise, Esq.* (MI P62849)
PO Box 131098
Ann Arbor, Michigan 48113
Tel: (734) 635-3756; Fax: (801) 760-3901
rmuise@americanfreedomlawcenter.org
*Subject to admission *pro hac vice*