UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

MONICA MILLER and SUZANNE
ABDALLA

                        Plaintiffs,

        -against-                                    1:23-CV-820 (LEK/DJS)

LETITIA JAMES,

                        Defendant.

_____

## MEMORANDUM-DECISION AND ORDER

### I.    INTRODUCTION

On July 7, 2023, Plaintiffs Monica Miller and Suzanne Abdalla filed a complaint against

Defendant Letitia James. Dkt. No. 1 ("Complaint"). In the Complaint, Plaintiffs allege violations

of the First and Fourteenth Amendments and defamatory speech. See id. ¶¶ 55–69. On October

12, 2023, Defendant filed a motion to dismiss. Dkt. No. 8-3 ("Motion"). Plaintiffs filed a

response, Dkt. No. 10 ("Response"), and Defendant filed a reply, Dkt. No. 13 ("Reply").

For the reasons that follow, Defendant's Motion is granted in part and denied in part.

### II.   BACKGROUND

The following facts are stated as alleged in Plaintiffs' Complaint.

Plaintiff Miller is a Michigan resident who identifies as Roman Catholic and as a "pro-

life advocate." Compl. ¶ 9. Plaintiff Abdalla is a Michigan resident who identifies as Byzantine

Catholic and as a "pro-life advocate." Id. ¶ 16. Both participate in activities as part of Red Rose

Rescue, including "praying, distributing literature, holding pro-life signs, and counselling women

on public sidewalks outside of abortion centers." Id. ¶¶ 11, 18; see ¶¶ 9, 16. Plaintiff Miller also

enters reproductive care clinics as part of her advocacy, including entering clinics that provide

abortion services. See id. ¶ 12. Plaintiffs state that they take these actions on the basis of their

"sincerely held religious beliefs." Id. ¶¶ 10, 17. Defendant "is the Attorney General of the State

of New York and a resident of the State of New York." Id. ¶ 22.

On June 8, 2023, Defendant held a press conference announcing the filing of a civil

complaint,[1] ("AG Complaint") against Red Rose Rescue and seven individuals. Plaintiffs were

not parties to the suit. See id. ¶ 28; see also Dkt. No. 8-2 ("Krasnokutski Exhibit"). The AG

Complaint alleged civil violations of the Freedom of Access to Clinic Entrances Act, 18 U.S.C. §

248, and the New York Clinic Access Act, N.Y. Civ. Rights Law § 79-m (together, "FACE

Acts"). See Compl. ¶ 28; AG Complaint. While Plaintiff Miller's name was included in the

allegations made in the AG Complaint, she was not named as a defendant in the lawsuit. See

Compl. ¶ 30. Plaintiff Abdalla was not mentioned in the AG Complaint. See AG Complaint.

During the press conference, "Defendant James labelled those who associate with Red Rose

Rescue as 'terrorists,' and she labelled Red Rose Rescue a 'terrorist group.'" Compl. ¶ 31.

Defendant did not bring any criminal charges relating to terrorism against Plaintiffs or against

any of the named plaintiffs in the AG Complaint. See id. ¶ 36. Defendant's statements in the

press conference were published on the Attorney General's website and covered by the media.

See id. ¶ 33.

Based on her comments in the press conference, Plaintiffs allege that Defendant "has

disseminated false and defamatory information about Plaintiffs, which irreparably harmed

Plaintiffs' interests and will continue to cause harm to Plaintiffs," stating that, "[a]bsent relief

from this Court, Defendant James will continue to take action that unlawfully designates and

---

[1] New York by James v. Red Rose Rescue, No. 23-CV-4832, Dkt. No. 1 (S.D.N.Y. Jun. 8, 2023).
A preliminary injunction was entered in favor of Plaintiff Letitia James on December 7, 2023.
See New York by James v. Rescue, 705 F. Supp. 3d 104 (2023).

targets Plaintiffs as terrorists." Id. ¶ 26; see also id. ¶ 40 (alleging that "Defendant James' public dissemination of false information about Plaintiffs is injurious to Plaintiffs' interests, which has caused and will continue to cause irreparable harm to Plaintiffs and their public reputation" as well as having a "chilling effect" on both Plaintiffs' freedom of speech and right to expressive association). Plaintiffs allege that these comments were "motivated by malice" and "made with hatred, ill will, and spite." Id. ¶ 41. Plaintiffs speculate that "Defendant James will continue to disseminate false information about Plaintiffs unless enjoined from doing so by this Court," id., and that Defendant's statements "create[] a basis for government investigation, surveillance, punishment, condemnation, and other disfavored treatment" and "subject[] Plaintiffs to public retribution," id. ¶ 46.

Plaintiffs allege four claims for relief: (1) violation of their First Amendment right to freedom of speech, see id. ¶¶ 55–57; (2) violation of their First Amendment right to expressive association, see id. ¶¶ 58–60; (3) violation of their Fourteenth Amendment right to equal protection, see id. ¶¶ 61–63; and (4) defamation under state law, see id. ¶¶ 64–69. Plaintiffs bring their constitutional claims under 42 U.S.C. § 1983 against Defendant in her official capacity and bring their defamation claim against Defendant in her personal capacity. See id. ¶ 27. Plaintiffs request a declaratory judgment that Defendant's speech violated the First and Fourteenth Amendments, a permanent injunction preventing Defendant from making similar statements in the future, and an award of "compensatory and punitive damages in the amount of $5,000,000" for defamation, as well as fees and expenses. Id. at 15–16.

## III.   LEGAL STANDARD

A district court will dismiss an action pursuant to Rule 12(b)(1) "for lack of subject matter jurisdiction if the court lacks the statutory or constitutional power to adjudicate it." Conn.

Parents Union v. Russell-Tucker, 8 F.4th 167, 172 (2d Cir. 2021). When deciding whether to dismiss under Rule 12(b)(1), the court "must accept as true all material facts alleged in the complaint and draw all reasonable inferences in the plaintiff's favor." Buday v. N.Y. Yankees P'ship, 486 F. App'x 894, 895 (2d Cir. 2012) (quoting Conyers v. Rossides, 558 F.3d 137, 143 (2d Cir. 2009)). "However, argumentative inferences favorable to the party asserting jurisdiction should not be drawn." Id. (quoting Atl. Mut. Ins. Co. v. Balfour Maclaine Int'l Ltd., 968 F.2d 196, 198 (2d Cir. 1992)).

To survive a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), a "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). A court must accept as true the factual allegations contained in a complaint and draw all inferences in favor of a plaintiff. See Allaire Corp. v. Okumus, 433 F.3d 248, 249–50 (2d Cir. 2006). A complaint may be dismissed pursuant to Rule 12(b)(6) only where it appears that there are not "enough facts to state a claim to relief that is plausible on its face." Twombly, 550 U.S. at 570. Plausibility requires "enough fact[s] to raise a reasonable expectation that discovery will reveal evidence of [the alleged misconduct]." Id. at 556. In considering whether a plaintiff has alleged enough in their complaint, a court may also consider "documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint." DiFolco v. MSNBC Cable LLC, 622 F.3d 104, 111 (2d Cir. 2010). "[W]here a document is not incorporated by reference, the court may nevertheless consider it where the complaint relies heavily upon its terms and effect, which renders the document integral to the complaint." Chambers v. Time Warner, Inc., 282 F.3d 147, 153 (2d Cir. 2002) (internal quotations omitted).

The plausibility standard "asks for more than a sheer possibility that a defendant has acted unlawfully." Iqbal, 556 U.S. at 678. The Supreme Court has stated that "the pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Id. (citing Twombly, 550 U.S. at 555). Where a court is unable to infer more than the mere possibility of the alleged misconduct based on the pleading facts, the pleader has not demonstrated that she is entitled to relief and the action is subject to dismissal. See id. at 679.

Generally, a notice of dismissal by court order "operates as an adjudication on the merits." Fed. R. Civ. P. 41(b). Even so, a court should "freely give leave [to amend a complaint] when justice so requires." Fed. R. Civ. P. 15(a)(2). "However, the Court is not required to grant leave to amend where such amendment would be futile, or, in other words, when any amendment would not be able to withstand a motion to dismiss under Fed. R. Civ. P. 12(b)(6)." Ryle v. Rehrig Pac. Co., No. 19-CV-1478, 2020 WL 6196144, at *5 (N.D.N.Y. Oct. 22, 2020) (citing Byerly v. Ithaca Coll., 290 F. Supp. 2d 301, 305 (N.D.N.Y. 2003)).

## IV.   DISCUSSION

For the reasons discussed below, Plaintiffs' constitutional and tort claims are dismissed.[2]

### A.  Standing

Defendant argues that Plaintiffs' Section 1983 claims must be dismissed because Plaintiffs do not have standing to maintain a claim. See Mot. at 6–8. The Court agrees and finds

---

[2] Since the Court dismisses Plaintiffs' First Amendment and Fourteenth Amendment claims on the basis of standing, the Court declines to evaluate Defendant's additional arguments: whether Plaintiffs' claims are barred by the Eleventh Amendment, whether Plaintiffs have failed to state a claim for relief, or whether Defendant is entitled to qualified immunity.

that Plaintiffs have not established standing on their First Amendment or Fourteenth Amendment claims.

"To establish Article III standing, a plaintiff must show (1) an 'injury in fact,' (2) a sufficient 'causal connection between the injury and the conduct complained of,' and (3) a 'likelihood' that the injury 'will be redressed by a favorable decision.'" Susan B. Anthony List v. Driehaus, 573 U.S. 149, 157–58 (2014) (quoting Lujan v. Defenders of Wildlife, 504 U.S. 555, 560–61 (1992)). "An Article III-sufficient injury, however, must be concrete and particularized and actual or imminent, not conjectural or hypothetical." Picard v. Magliano, 42 F.4th 89, 97 (2d Cir. 2022) (internal quotations omitted); see also Spokeo, Inc. v. Robins, 578 U.S. 330, 340 (2016) ("A 'concrete' injury must be '*de facto*'; that is, it must actually exist.") (citing Black's Law Dictionary 479 (9th Ed. 2009)). "[A] plaintiff must demonstrate standing separately for each form of relief sought." DaimlerChrysler Corp. v. Cuno, 547 U.S. 332, 352 (2006) (citing Friends of Earth, Inc. v. Laidlaw Env. Servs., Inc., 528 U.S. 167, 185 (2000)).

A risk of future harm may only provide the basis for forward-looking, injunctive relief, and only if "the risk of harm is sufficiently imminent and substantial." TransUnion LLC v. Ramirez, 594 U.S. 413, 435 (2021); see also Clapper v. Amnesty Int'l USA, 568 U.S. 398, 409 (2013) (noting that an injury must be *certainly impending* to constitute injury in fact and that allegations of *possible* future injury are not sufficient") (cleaned up); Monsanto Co. v. Geertson Seed Farms, 561 U.S. 139, 153–55 (2010) (describing the level of factual pleading required to demonstrate a substantial risk of harm); Los Angeles v. Lyons, 461 U.S. 95, 111 (1983); (holding that plaintiffs lack standing to pursue injunctive relief when they are unable to establish a "real or immediate threat" of injury); Nicosia v. Amazon.com, Inc., 834 F.3d 220, 239 (2d Cir. 2016) ("Although past injuries may provide a basis for standing to seek money damages, they do not

confer standing to seek injunctive relief unless the plaintiff can demonstrate that she is likely to be harmed again in the future in a similar way.").

    *1.*   *First Amendment Claims*

"A plaintiff has standing [for a First Amendment claim] if he can show *either* that his speech has been adversely affected by the government [action] or that he has suffered some other concrete harm," including "non-speech related harms." Dorsett v. City of Nassau, 732 F.3d 157, 160 (2d Cir. 2013) (per curiam); see also Gill v. Pidlypchak, 389 F.3d 379, 383 (2d Cir. 2004) ("[S]tanding is no issue whenever the plaintiff has clearly alleged a concrete harm independent of First Amendment chilling. It is only a problem where no harm independent of the First Amendment is alleged.).

    a.   <u>Chilling</u>

First, the Court assesses whether Plaintiffs have alleged an adverse effect on speech, or actual chilling, sufficient to allege an injury-in-fact.

"Allegations of a subjective 'chill' are not an adequate substitute for a claim of specific present objective harm or a threat of specific future harm." Laird v. Tatum, 408 U.S. 1, 13–14 (1972). To allege chilling of speech, a plaintiff "must 'proffer some objective evidence to substantiate their claim that the challenged conduct has deterred them from engaging in protected activity.'" Nitke v. Ashcroft, 253 F. Supp. 2d 587, 596 (S.D.N.Y. 2003) (quoting Bordell v. Gen. Elec. Co., 922 F.2d 1057, 1061 (2d Cir. 1991)). Plaintiffs must plead that they were deterred from engaging in protected activity with specificity; conclusory statements will not suffice. See Guan v. Mayorkas, 530 F. Supp. 3d 237, 258 (E.D.N.Y. 2021) (finding that plaintiffs had not pled actual chilling of their First Amendment rights for standing purposes because, "[a]part from the conclusory statement that the CBP officers' past conduct 'would reasonably chill Plaintiffs

and other journalists from travelling to Mexico to report on U.S.-Mexico border issues,'
Plaintiffs do not allege that they were *actually* chilled from pursuing any journalistic activities.")
(internal citations omitted). Fear of future consequences is insufficient. See id. (finding that fear
of possible secondary inspections during border crossings was insufficient to establish standing).

Plaintiffs allege that Defendant's statements "also have a chilling effect on Plaintiffs'
rights to freedom of speech and expressive association, and the defamatory statements have a
chilling effect on the rights to freedom of speech and expressive association of other pro-lifers
associated with Red Rose Rescue." Compl. ¶ 40; see also id. ¶ 53 (stating that, to establish a
violation of the freedom of association, "[t]he risk of a chilling effect on association is enough,
because First Amendment freedoms need breathing space to survive"). However, Plaintiffs do
not plead that they were actually chilled from either pursuing any particular speech or associating
with other individuals affiliated with Red Rose Rescue. While both Plaintiffs list the speech they
engage in to support Red Rose Rescue, see id. ¶¶ 11, 18, neither allege that they have been
dissuaded from engaging in that speech by Defendant's press conference. See Dorsett, 732 F.3d
at 161 (finding no chilling effect where the plaintiff remained politically active and maintained
political associations).

Similarly, while Plaintiffs argue that Defendant's speech "brand[s] pro-lifers such as
Plaintiffs as criminals on account of their religious beliefs and viewpoints, subjecting them to
governmental scrutiny, investigation, surveillance, condemnation, and intimidation, which have a
deterrent effect on Plaintiffs' constitutionally protected activities and their rights to freedom of
speech and expressive association," Compl. ¶ 49, Plaintiffs do not allege that any of these
speculative fears have chilled their speech or that "the risk of harm is sufficiently imminent and
substantial" to imply future chilling, TransUnion LLC, 594 U.S. at 435. Plaintiffs have merely

alleged that these harms may occur at some point in the future, but they provide none of the specifics required to suggest that they are likely or imminent. Accordingly, Plaintiffs have not alleged chilling or future risk of chilling of their speech or expressive association sufficient to justify either a declaratory judgment or injunctive relief.

b.    <u>Other Concrete Harms</u>

Since Plaintiffs have not alleged actual chilling, the Court turns to whether they have alleged some other concrete harm. Plaintiffs offer two theories of concrete harm: reputational damage and increased risk of disfavored government treatment. <u>See</u> Compl. ¶ 46. Neither are persuasive.

Various intangible harms can provide the basis for finding injury-in-fact, including reputational harms. <u>See</u> <u>TransUnion LLC</u>, 594 U.S. at 425; <u>but see</u> <u>Foretich v. United States</u>, 351 F.3d 1198, 1212–1213 (D.C. Cir. 2003) ("[W]here harm to reputation arises as a byproduct of government action, the reputational injury, without more, will not satisfy Article III standing *when that government action itself no longer presents an ongoing controversy*."). For example, "being put on a blacklist, or being formally censured for misconduct, is treated as immediately redressible harm because it diminishes (or eliminates) the opportunity to practice one's profession even if the list or the censure does not impose legal obligations." <u>United States v. Accra Pac, Inc.</u>, 173 F.3d 630, 633 (7th Cir. 1999) (holding that a report of current pollutants on land did not constitute concrete injury) (citing <u>Joint Anti-Fascist Refugee Comm. v. McGrath</u>, 341 U.S. 123 (1951)).

Plaintiffs allege that they have standing because of the reputational harm they have experienced. To support this point, Plaintiffs cite a number of cases—largely from other circuits—establishing that reputational harm can confer standing. <u>See</u> Resp. at 11–12. However,

9

unlike the plaintiffs in those cited cases, Plaintiffs do not provide anything beyond conclusory assertions that their public reputation has been harmed. Cf. Parsons v. U.S. Dept. of Justice, 801 F.3d 701, 712 (6th Cir. 2015) (finding standing where allegations of chilling were "accompanied by allegations of concrete reputational injuries resulting in allegedly improper stops, detentions, interrogations, searches, denial of employment, and interference with contractual relations"); NCAA v. Governor of N.J., 730 F.3d 208, 220 (3d Cir. 2013) (finding standing where appellee cited legislative history, public opinion polls, and expert evidence to establish reputational harm); Gully v. NCUA Bd., 341 F.3d 155, 161–62 (2d Cir. 2003) (finding manager of a federal credit union had standing to challenge a final determination that she breached her fiduciary duties); Bowers v. Nat'l Collegiate Athletic Ass'n, 475 F.3d 524, 542–43 (3d Cir. 2007) (finding attorney had standing to challenge a public reprimand made in a sanctions order); Foretich v. United States, 351 F.3d 1198, 1213 (D.C. Cir. 2003) (finding vitiation of parental rights and demonstrated loss of business from passed legislation could confer standing).

Unlike in these cases, Plaintiffs rely on a press conference in which neither Plaintiff was mentioned by name. See Compl. ¶¶ 28, 31–32; Krasnokutski Ex. Plaintiffs do not establish that any reputational harm actually materialized or was likely to materialize. See TransUnion LLC, 594 U.S. at 433–435 (finding concrete reputational harm for class members for whom TransUnion provided misleading credit reports to third-parties but not to those class members whose files merely contained misleading information that could be transmitted to future third-parties); Meese v. Keene, 481 U.S. 465, 473 (1987) (finding reputational harm where a plaintiff alleged he wished to exhibit three films but did not because "his personal, political, and professional reputation would suffer and his ability to obtain re-election and to practice his profession would be impaired," supported by detailed affidavits, an opinion poll, and views of a

political analyst); Doe v. Nat'l Bd. of Med. Exam'rs, 199 F.3d 146, 153 (3d Cir. 1999) (finding an injury-in-fact where a plaintiff established that he had actually been identified as a disabled person against his will on already-promulgated score reports). Indeed, Plaintiffs do not allege that they were formally designated as "terrorists." See McGrath, 341 U.S. at 139 (finding standing where plaintiff was included on a blacklist of allegedly Communist organizations provided by the Attorney General to the Loyalty Review Board and disseminated to government agencies). In keeping with this line of cases, the Court finds that Plaintiffs have not alleged reputational harm sufficient to establish an injury-in-fact because they have not established that a concrete harm has occurred or is likely to occur.

Plaintiffs need not allege reputational harms to have standing if they allege the existence of other concrete harms. The Second Circuit has recognized standing in First Amendment cases when a plaintiff has alleged certain non-speech related harms, including lost government contracts, additional scrutiny at border crossings, revoked building permits, and refusal to enforce zoning laws. See Dorsett, 732 F.3d at 160 (collecting cases).

Plaintiffs do allege future, speculative harms that they believe are more likely because of Defendant's statements. See Compl. ¶ 46 ("Defendant James' labeling of pro-lifers as 'terrorists' creates a basis for government investigation, surveillance, punishment, condemnation, and other disfavored treatment, and it has tarnished Plaintiffs' public reputation and subjects Plaintiffs to public retribution). However, Plaintiffs do not allege that they have actually experienced or are likely to experience any of these possible harms, which distinguishes their experience from the experiences of the plaintiffs in their cited cases. Cf. NCAA, 730 F.3d at 220; Gully, 341 F.3d at 161–62; Bowers, 475 F.3d at 542–43; Foretich, 351 F.3d at 1213.

Plaintiffs do not specifically allege that their claim of defamation itself is sufficient to allege standing for their constitutional claims. In any event, the Court is skeptical that allegations of defamation without specific damages are adequate to create standing for either a free expression or free association claim. See Zherka v. Amicone, 634 F.3d 642, 646 (2d Cir. 2011) (noting that the presumed damages of defamation *per se* under New York law "do not establish a concrete harm sufficient for a federal claim of First Amendment retaliation"). Regardless, since Plaintiffs' claims for defamation are dismissed, as discussed below, such a claim would be unavailing.

In summary, the Court finds that Plaintiffs have not alleged standing to pursue either declaratory or injunctive relief for their free expression and expressive association claims, because they have failed to allege that they have experienced or will likely experience chilling or another related concrete harm.

### 2. Fourteenth Amendment Claims

Plaintiffs also allege violation of their equal protection rights as guaranteed by the Fourteenth Amendment. See Compl. ¶¶ 61–63. Specifically, Plaintiffs allege that Defendant "deprived Plaintiffs of the equal protection of the law . . . by targeting Plaintiffs for defamatory and disfavored treatment on account of Plaintiffs' religious viewpoint on abortion." Id. ¶ 62. For the reasons that follow, Plaintiffs do not have standing to pursue relief for their Fourteenth Amendment claims.

"An injury rooted in the stigmatizing effect of government conduct 'accords a basis for standing only to those persons who are personally denied equal treatment by the challenged discriminatory conduct.'" Robinson v. Sessions, 260 F. Supp. 3d 264, 276 (W.D.N.Y. 2017) (quoting Allen v. Wright, 468 U.S. 737, 755 (1984), abrogated in part on other grounds by

12

Lexmark Int'l, Inc. v. Static Control Components, Inc., 572 U.S. 118 (2014)). "[M]ere dignitary harm resulting from the government's actions, without more, is not enough to confer standing upon a plaintiff." Mehdi v. U.S. Postal Service, 988 F. Supp. 721, 731 n.9 (S.D.N.Y. 1997).

"In seeking prospective relief like an injunction, 'a plaintiff must show that he can reasonably expect to encounter the same injury again in the future—otherwise there is no remedial benefit that he can derive from such a judicial decree." Leder v. Am. Traffic Sols., Inc., 81 F. Supp. 3d 211, 222 (E.D.N.Y. 2015), aff'd, 630 F. App'x 61 (2d Cir. 2015) (quoting MacIssac v. Town of Poughkeepsie, 770 F. Supp. 2d 587, 593 (S.D.N.Y. 2011)); see also Congregation Rabbinical Coll. of Tartikov, Inc. v. Village of Pomona, N.Y., 945 F.3d 83, 110 (2d Cir. 2019) ("'[C]onjectural' injuries do not suffice under Article III.") (alteration in original) (quoting Lujan, 504 U.S. at 560); Nicosia, 834 F.3d at 239 ("[The plaintiffs] lack standing to pursue injunctive relief where they are unable to establish a 'real or immediate threat' of injury.") (quoting Lyons, 461 U.S. at 111–12).

Plaintiffs allege that, as a result of the press conference, they "have suffered irreparable harm, including the loss of their constitutional rights and public reputation." Compl. ¶ 63. As discussed above, the Court is unpersuaded that Plaintiffs have alleged an injury-in-fact related to their reputations. See IV.A.1 Plaintiffs' Fourteenth Amendment claims fail for similar reasons, since Plaintiffs have not alleged that they were mentioned in the press conference or that they have experienced any actual harm to reputation—or, indeed, any other concrete harm—as a result of Defendant's statements. See Robinson, 260 F. Supp. 3d at 276 (finding that the plaintiffs did not have standing despite alleging that the defendants' conduct "associates them with terrorists" because the plaintiffs "[did] not allege that they have been subjected to the conduct that creates the stigma"). Since Plaintiffs do not allege that they have been personally

affected, by or suffered any actual harm from, Defendant's statements, they have not established their standing to seek declaratory relief.

Additionally, Plaintiffs have not alleged how they are at risk of future harm to their rights under the Fourteenth Amendment. Their claims appear to allege that the Defendant's press conference creates a likelihood that Plaintiffs will be subject to "government investigation, surveillance, punishment, condemnation, and other disfavored treatment, and it has tarnished Plaintiffs' public reputation and subjects Plaintiffs to public retribution." Compl. ¶ 46. As discussed above, Plaintiffs have not alleged that they have a "reasonable expectation" of these future harms sufficient to survive the Supreme Court's guidance in cases like Clapper. As to the alleged damage to reputation, Plaintiffs have neither alleged how they would suffer continuing defamation absent an injunction barring speech nor that the speech is likely to continue. Absent more, Plaintiffs do not have standing to seek injunctive relief on their Equal Protection claims.

In summary, Plaintiffs have not established standing to pursue declaratory or injunctive relief for their Fourteenth Amendment Equal Protection claims.

## B. Defamation Claims

### 1. Jurisdiction

Plaintiffs' remaining claims fall under state law. Plaintiffs state that the Court "has jurisdiction over Plaintiffs' state law claim pursuant to 28 U.S.C. § 1332 as there is complete diversity of citizenship and the amount in controversy exceeds $75,000." Compl. ¶ 5.

Under Section 1332(a), "[t]he district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between . . . citizens of different states." "A party invoking the jurisdiction of the federal court has the burden of proving that it appears to a 'reasonable

14

probability' that the claim is in excess of the statutory jurisdictional amount." <u>Scherer v. Equitable Life Assurance Soc'y of U.S.</u>, 347 F.3d 394, 397 (2d Cir. 2003) (citing <u>Tongkook Am., Inc. v, Shipton Sportswear Co.</u>, 14 F.3d 781, 784 (2d Cir. 1994)). "This burden is hardly onerous, however, for we recognize 'a rebuttable presumption that the fact of the complaint is a good faith representation of the actual amount in controversy.'" <u>Id.</u> (quoting <u>Wolde-Meskel v. Vocational Instruction Project Comty. Servs., Inc.</u>, 166 F.3d 59, 63 (2d Cir. 1999)). "[E]ven where [the] allegations leave grave doubt about the likelihood of a recovery of the requisite amount, dismissal is not warranted." <u>Zacharia v. Harbor Island Spa, Inc.</u>, 684 F.2d 199, 202 (2d Cir. 1982).

Plaintiffs are residents of Michigan, <u>see</u> Compl. ¶¶ 9, 16, and Defendant is a resident of New York, <u>see id.</u> ¶ 22. Therefore, Plaintiffs have demonstrated complete diversity and met the first prong for diversity jurisdiction. Plaintiffs also request an award of "compensatory and punitive damages in the amount of $5,000,000 against Defendant James in her individual and personal capacity for defaming Plaintiffs." Compl. at 15. Although Plaintiffs have not pled any basis to support such a number, absent a showing "'to a legal certainty' that the amount recoverable does not meet the jurisdictional threshold," <u>Scherer</u>, 347 F.3d at 397, the Court is satisfied that the requirements for diversity jurisdiction are met.

## 2.   *Merits of Plaintiffs' Claim*

Defendant argues that Plaintiffs' defamation claim should be dismissed under Rule 12(b)(6) because the statements could not reasonably be understood to refer to Plaintiffs and because, in context, they are expressions of opinion "not properly subject to a defamation claim." Mot. at 18–19. The Court agrees with Defendant that Plaintiffs' defamation claims should be dismissed.

"Defamation is the injury to one's reputation either by written expression, which is libel, or by oral expression, which is slander." Ganske v. Mensch, 480 F. Supp. 3d 542, 551 (S.D.N.Y. 2020) (quoting Biro v. Conde Nast, 883 F. Supp. 2d 441, 456 (S.D.N.Y. 2012). "Under New York law, to state a claim for defamation, a plaintiff must allege "(1) a written [or spoken] defamatory statement of and concerning the plaintiff, (2) publication to a third party, (3) fault, (4) falsity of the defamatory statement, and (5) special damages or per se actionability." Kesner v. Dow Jones & Co., Inc., 515 F. Supp. 3d 149, 169–70 (S.D.N.Y. 2021) (quoting Palin v. N.Y. Times Co., 940 F.3d 804, 809 (2d Cir. 2019)) (alterations in original). "[T]he court must give the disputed language a fair reading in the context of the publication as a whole." Elias v. Rolling Stone LLC, 872 F.3d 97, 109 (2d Cir. 2017) (quoting Armstrong v. Simon & Schuster, Inc., 649 N.E.2d 825, 829 (1995)).

Parties do not appear to contest the second or third prongs of the Kesner test. Mot. at 18–23; Resp. at 21–25. Accordingly, the Court will evaluate prongs one, four, and five.

a.      Prong One: "Of and Concerning"

Defendant argues that Plaintiffs have failed to state a claim for defamation because her statements were not "of and concerning" Plaintiffs. Mot. at 19–20. Since the Court cannot conclusively determine the size of Red Rose Rescue based on the pleadings, the Motion is denied on this ground because of the group libel doctrine.

In assessing whether a plaintiff has stated a claim of defamation, "[t]he dispositive inquiry, under either Federal or New York law, is whether a reasonable reader could have concluded that the articles were conveying facts about the plaintiff." Gross v. N.Y. Times Co., 623 N.E.2d 1163, 1167 (N.Y. 1993) (cleaned up) (quoting 600 W. 115th St. Corp. v. Von Gutfeld, 603 N.E.2d 930, 934 (N.Y. 1992); see also N.Y. Times Co. v. Sullivan, 376 U.S. 254,

288–89 (1964) (finding the evidence did not support a determination that the allegedly libelous statements were made "of and concerning" respondent because "[t]here was no reference to respondent in the advertisement, either by name or official position" and the "statements could not reasonably be read as accusing respondent of personal involvement in the acts in question"). "Although the 'of and concerning' requirement generally presents a factual question for the jury, 'the Court properly may dismiss an action pursuant to Rule 12(b)(6) where the statements are incapable of supporting a jury's finding that the allegedly libelous statements refer to plaintiff.'" Diaz v. NBC Universal, Inc., 536 F. Supp. 2d 337, 342 (S.D.N.Y. 2008) (quoting Church of Scientology Intern. v. Time Warner, Inc., 806 F. Supp. 1157, 1160 (S.D.N.Y. 1992)). "While a plaintiff may use extrinsic facts to prove that the statement is 'of and concerning' him, he must show the reasonableness of concluding that the extrinsic facts were known to those to whom the statement was made." Three Amigos SJL Rest., Inc. v. CBS News Inc., 15 N.Y.S.3d 36, 42 (N.Y. App. Div. 2015).

"[A]n individual plaintiff must be clearly identifiable [in an allegedly defamatory statement] to support a claim for defamation." Algarin v. Town of Wallkill, 421 F.3d 137, 139 (2d Cir. 2005) (quoting Abramson v. Pataki, 278 F.3d 93, 102 (2d Cir. 2002)). "[A]n individual belonging to a small group may maintain an action for individual injury resulting from a defamatory comment about the group, by showing that he is a member of the group . . . [b]ecause the group is small and includes few individuals, reference to the individual plaintiff reasonably follows." Brady v. Ottaway Newspapers, Inc., 445 N.Y.S.2d 786, 790 (N.Y. App. Div. 1981). However, "[u]nder the group libel doctrine, when a reference is made to a large group of people, no individual within that group can fairly say that the statement is about him, nor can the 'group' as a whole state a claim for defamation." Diaz, 536 F. Supp. 2d at 343 (citing, *inter alia*,

Sullivan, 376 U.S. at 288); see also Three Amigos., 15 N.Y.S.3d at 41 (same). While "New York Courts have not set a particular number above which defamation of a group member is not possible," the Southern District has noted the absence of "any cases where individual members of groups larger than sixty have been permitted to go forward [with a libel claim]." Anyanwu v. Columbia Broad. Sys., Inc., 887 F. Supp. 690, 693 (S.D.N.Y. 1995); see also Restatement (Second) of Torts § 564A cmt. b. (1977) ("It is not possible to set definite limits as to the size of the group or class, but the cases in which recovery has been allowed usually have involved numbers of 25 or fewer.").

Here, Defendant's statements did not name Plaintiffs. See Compl. ¶¶ 28, 31–32; Krasnokutski Ex. Plaintiff Abdalla is not named at all in the AG Complaint and was not mentioned in the press conference, nor has she alleged that she would be publicly known as a member of Red Rose Rescue other than by stating that she has previously "spoken to the media on behalf of Red Rose Rescue." Compl. ¶ 20. While Plaintiff Miller is referenced in the AG Complaint, she was not mentioned in the press conference. See id. ¶ 30.[3] Thus, both Plaintiffs must overcome the group libel doctrine to support their defamation claims based on their affiliation with Red Rose Rescue. Since neither Plaintiffs nor Defendant have definitively established the number of individuals who are members of Red Rose Rescue, the Court cannot conclusively determine the applicability of the group libel doctrine based on the size of the group. But see New York by James, 705 F. Supp. at 121–22 (S.D.N.Y. 2023) (noting that the AG

---

[3] Even if Plaintiffs had based the Complaint on the pleadings in the AG Complaint, such a claim would be barred because "a party who files a pleading . . . in a judicial proceeding has absolute immunity . . . if they relate to the subject of the inquiry." Woodford v. Cmty. Action of Greene Cty, Inc., 103 F. Supp. 2d 97, 101 (N.D.N.Y. 2000) (Kahn, J.) (quoting Sacks v. Stecker, 60 F.2d 73, 75 (2d Cir. 1932)).

Complaint lists at least twenty-eight purported "Red Rose Rescues" that occurred in at least eight states and Washington D.C.).[4] Accordingly, the Motion is denied on this basis.

b.  Prong Four: Falsity of the Defamatory Statement

In the alternative, Defendant argues that her statements are not capable of being proven false because they are best understood as non-actionable statements of opinion. See Mot. at 20–23. The Court agrees, and accordingly dismisses Plaintiffs' defamation claims.

"Since falsity is a necessary element of a defamation cause of action and only 'facts' are capable of being proven false, it follows that only statements alleging facts can properly be the subject of a defamation action." Gross, 623 N.E.2d at 1168; see also Enigma Software Grp. USA, LLC v. Bleeping Computer LLC, 194 F. Supp. 3d 263, 281 (S.D.N.Y. 2016) ("New York law absolutely protects statements of pure opinion, such that they can never be defamatory."). In New York, "[d]istinguishing between fact and opinion is a question of law for the courts, to be decided based on 'what the average person hearing or reading the communication would take it to mean.'" Davis v. Boeheim, 22 N.E.3d 999, 1004–05 (N.Y. 2014) (quoting Steinhilber v. Alphonse, 501 N.E.2d 550, 553 (N.Y. 1986). Courts look to three factors to distinguish facts from opinion in the defamation context:

> (1) whether the specific language in issue has a precise meaning which is readily understood; (2) whether the statements are capable of being proven true or false; and (3) whether either the full context of the communication in which the statement appears or the broader social context and surrounding circumstances are such as to signal

---

[4] The AG Complaint, discussed at length in the Complaint, see Compl. ¶¶ 13, 28, 29, 30, 36, names thirty-two individuals affiliated with Red Rose Rescue and references additional unnamed affiliated individuals. See AG Complaint ¶¶ 11–16, 64, 67–70, 72, 75, 79, 83–84, 89. Plaintiff Abdalla was not mentioned in the AG Complaint. See id; see also In re Synchrony Fin., 988 F.3d 157, 171 (2d Cir. 2021) (noting that, when ruling on a motion to dismiss pursuant to Rule 12(b)(6), courts "may consider any written instrument attached to the complaint, statements or documents incorporated into the complaint by reference").

> readers or listeners that what is being read or heard is likely to be
> opinion, not fact.

Gross, 623 N.E.2d at 1165. The plaintiff bears the burden of proving "that in the context of the

entire communication a disputed statement is not protected opinion." Celle v. Filipino Report

Enters., Inc., 209 F.3d 163, 179 (2d Cir. 2000).

Generally, "rhetorical hyperbole" or "imaginative expression" is not considered

defamatory because it "cannot 'reasonably [be] interpreted as stating actual facts' about an

individual" that could be proved false. Milkovich v. Lorain Journal Co., 497 U.S. 1, 20 (1990)

(quoting Hustler Magazine, Inc. v. Falwell, 485 U.S. 46, 50 (1988)); see also Greenbelt Co-op

Pub. Ass'n v. Bresler, 398 U.S. 6, 13–14 (1970) (finding that a statement calling a negotiating

tactic "blackmail" did not constitute defamation even when the speakers knew that no blackmail

had been committed because "[n]o reader could have thought that either the speakers at the

meetings or the newspaper articles reporting their words were charging [respondent] with the

commission of a criminal offense" and it was clear that "the word was no more than rhetorical

hyperbole"); Johnson v. Riverhead Cent. Sch. Dist., 420 F. Supp. 3d 14, 32–33 (E.D.N.Y. 2018)

(finding principal's statement that called plaintiff a threat to the safety and security of a school

because of a prior weapons charge, compared plaintiff to the Columbine and Newtown school

shooters, and stated that plaintiff would have to be "pat down" every time they entered the

building" was "clear hyperbole"); Ratajack v. Brewster Fire Dep't Inc., 178 F. Supp. 3d 118, 165

(S.D.N.Y. 2016) (finding statements in which the defendant "articulated concerns that Plaintiff

was a racist or a future threat to others" was "nonactionable opinion"); LeBlanc v. Skinner, 955

N.Y.S.2d 391, 400 (N.Y. App. Div. 2012) (finding that a comment on a newspaper's internet

forum referring to a plaintiff as "a terrorist" did not constitute defamation, since such a statement

"was likely to be perceived as rhetorical hyperbole" or a "vigorous epithet" and thus "constituted

an expression of opinion") (internal quotations omitted); <u>Gisel v. Clear Channel Comm's, Inc.</u>, 942 N.Y.S.2d 751, 752 (N.Y. App. Div. 2012) (finding statements calling the plaintiff "a cold-blooded murderer" after plaintiff was acquitted of criminally negligent homicide was a "nonactionable expression of pure opinion"); <u>Lukashok v. Concerned Residents of North Salem</u>, 554 N.Y.S.2d 39, 40 (N.Y. App. Div. 1990) (finding statements published in an environmental newsletter stating that plaintiff "has resorted to what can only be called terrorism by suing every member of the Town Board and Planning Board personally" was "nonactionable opinion").

"A statement of 'pure opinion' is one which is either 'accompanied by a recitation of the facts upon which it is based' or 'does not imply that it is based upon undisclosed facts.'" <u>Biro</u>, 883 F. Supp. 2d at 461 (noting that "use of the terms 'shyster,' 'con man,' and finding an 'easy mark' is the type of 'rhetorical hyperbole' and 'imaginative expression' that is typically understood as a statement of opinion") (internal citation omitted). "A statement may still be actionable if it 'impl[ies] that the speaker's opinion is based on the speaker's knowledge of facts that are not disclosed to the reader.'" <u>Lan Sang</u>, 951 F. Supp. 2d at 520 (quoting <u>Levin v. McPhee</u>, 119 F.3d 189, 197 (2d Cir. 1997)).

Plaintiffs challenge Defendant's use of the words "terrorist" and "terrorist group." Compl. ¶ 66. The relevant question is whether these words are best understood in their context as an expression of opinion or as a statement of fact, based on the factors discussed in <u>Gross</u>.

First, the Court considers the precise meaning of the language at issue. Courts have been hesitant to apply one definition of a word when there is a colloquial meaning, even if there is also a specific legal or political definition. <u>See</u> <u>Springer v. Almontaser</u>, 904 N.Y.S. 2d 765, 767 (N.Y. App. Div. 2010) (finding that "defendant's statement that she was stalked and harassed was not an actionable statement of objective fact because it did not have a precise, readily

understood meaning, and would clearly be understood by a reasonable listener to be a figurative expression of how she felt"); Schwartz v. Nordstrom, Inc., 553 N.Y.S.2d 684, 685 (N.Y. App. Div. 1990) (finding that statement in arbitration calling the plaintiff a "Nazi" was "an expression of opinion which is not actionable"); Lukashok, 554 N.Y.S.2d at 40 (finding that a stating a plaintiff had resorted to "what can only be called terrorism" was a "nonactionable opinion"). While "terrorist" as a term is not specifically defined in New York's laws governing terrorism, see N.Y. Pen. L. § 490.05, the word "terrorist" can be legally understood to refer to someone who commits acts of terrorism proscribed by New York's criminal code, see N.Y. Pen L. §§ 490.00 *et seq*. However, as Defendant states, the word "terrorist" also refers more generally to those who engage in "the use of violent action in order to achieve political aims or to force a government to act." Mot. at 21 n.5. Given that multiple meanings of the word "terrorist" are available—and the fact that, despite Defendant's status as the Attorney General of New York, the statement was made in a press conference rather than a complaint or courtroom and was not accompanied with any language stating or suggesting a forthcoming charge linked to terrorism— the Court is not persuaded that Defendant intended to use the specific, legal definition of the word "terrorist." As such, the Court is not convinced that the language at issue has a precise meaning that is readily understood.

Second, the Court considers whether the statements can be proven true or false. "[W]here a statement is subjective and imprecise, it is not susceptible of being proven true or false." Jacobus v. Trump, 51 N.Y.S.3d 330, 338 (N.Y. Sup. Ct. 2017). Whether someone meets the colloquial meaning of "terrorist" is likely to be a matter of judgment or opinion. See Barber v. Premo, No. 20-CV-906368, 2021 WL 6622496, at *10 (N.Y. Sup. Ct. Sep. 29, 2021) ("Indeed, there is no precise, readily understood meaning of what Turnell may have meant by the use of

the term [assaulted], and it appears on its face to be a hyperbolic phrase, and thus not

defamatory."); Biro, 883 F. Supp. 2d at 463 (finding a description of the plaintiff as a "con man"

to be a "nonactionable expression of opinion" despite the fact that "con man" could be read to

refer to specific criminal activity). Therefore, the imprecise nature of Defendant's statements

suggests those statements are not capable of being proven false.

Third, the Court considers the context in which the statement was delivered and whether

the circumstances suggest that the statement is being delivered as opinion or fact. In her remarks,

Defendant specifically stated that associates of Red Rose Rescue had not been legally designated

as terrorists and that she "refer[s] to them as terrorists because of their activities." Resp. at 17

n.4; see Live Face on Web, LLC v. Five Boro Mold Specialist Inc., No. 15-CV-4779, 2016 WL

1717218, at *3 (S.D.N.Y. Apr. 28, 2016) (noting that the use of rhetorical indicators to signal

personal opinion and couched meaning indicate that "the defendant's statements, read in context,

are readily understood as conjecture, hypothesis, or speculation, [which] signals the reader that

what is said is opinion, and not fact") (citing Levin v. McPhee, 119 F.3d 189, 195 (2d Cir.

1997)). Defendant made these comments in a press conference describing the AG Complaint,

which alleged that associates of Red Rose Rescue "engaged in 'coordinated and repeated illegal

conduct, ranging from criminal trespass to barricading clinic entrances in order to block access to

abortion services in New York.'" New York by James, 705 F. Supp. 3d at 112 (granting

preliminary injunction in part in civil case discussed in the press conference at issue) (internal

citations omitted).

Plaintiffs argue that the context of the speech makes it less likely the statements presented

were received by listeners as opinion. They distinguish between LeBlanc, which involved speech

in an online forum, and the "press conference to address Red Rose Rescue and to issue official

statements of her office about this organization and those who associate with it," which "placed the power of the state government, with its authority, presumed neutrality, and assumed access to all the facts, behind a false accusation *designed* to target pro-lifers associated with Red Rose Rescue." Resp. at 23. However, the Court is unpersuaded. Since Defendant made this speech in a press conference, rather than in a complaint, hearing, or trial, it is unlikely a listener would receive the statement as a criminal charge of terrorism. The mere fact that a government official makes the challenged speech is not enough to convert the speech into a defamatory statement. See Gavenda v. Orleans County, No. 95-CV-251, 1997 WL 65870, at *8 (W.D.N.Y. Feb. 10, 1997) (finding speech to be "nonactionable opinion" when made by the three defendant employees of the Orleans County Sheriff's Department). While the identity of the speaker is relevant when considering the context in which the speech is made, the Court finds that the circumstances suggest Defendant's comments were an expression of her opinion.

Finally, while statements of opinion can be actionable if based on undisclosed information, Defendant's comments do not appear to be based on any undisclosed facts, but rather on the activities described in the AG Complaint and during the press conference. See Biro, 883 F. Supp. 2d at 461 (stating "a proffered hypothesis that is offered after a full recitation of the facts on which it is based is readily understood by the audience as conjecture" and cannot be considered defamatory). Rather, Defendant's comments appear to be editorial notes describing her perception of the facts laid out in the press conference and in the AG Complaint. See Ratajack, 178 F. Supp. 3d at 165 (finding a statement to be opinion because "the context makes clear that [the defendant] is not asserting new facts against [the] [p]laintiff, but is expounding upon the corollaries of the purported facts he has presented"). Thus, the Court concludes that a

24

reasonable listener would find that these comments were an expression of Defendant's subjective opinion and analysis of the allegations in the AG Complaint.

c.    <u>Prong Five: Damages and Defamation *Per Se*</u>

Plaintiffs argue in their Response that the Court should find that Defendant's statements constitute defamation *per se*. <u>See</u> Resp. at 21–23. Specifically, Plaintiffs suggest that the Court read Defendant's statements as accusing them of the type of crime contemplated by New York Penal Law, thus constituting defamation *per se*. <u>See</u> <u>id.</u> at 22.

"Under New York law, to recover on a defamation claim, a plaintiff must either plead special damages or that the statements are defamatory *per se*." <u>Kesner</u>, 515 F. Supp. 3d at 171. "Statements that are defamatory *per se* 'are actionable without pleading and proof of special damages.'" <u>Id.</u> (citations and quotations omitted). "[T]he law presumes that damages will result." <u>Liberman v. Gelstein</u>, 605 N.E.2d 344, 348 (N.Y. 1992). In New York, this doctrine applies when a plaintiff alleges that the speaker made statements "(i) charging [the] plaintiff with a serious crime; (ii) that tend to injure another in his or her trade, business or profession; (iii) that [the] plaintiff has a loathsome disease; or (iv) imputing unchastity to a woman." <u>Zherka v. Amicone</u>, 634 F.3d 642, 645 n.6 (2d Cir. 2011) (quoting <u>Liberman</u>, 605 N.E.2d at 347).

Usually, "certain statements . . . alleging criminal conduct on the part of [the] plaintiffs do not constitute defamation per se because 'reference to extrinsic facts is necessary to give them a defamatory import,' and that other statements, e.g. accusing [the] plaintiffs of terrorism, do not constitute defamation per se because they are 'likely to be perceived as 'rhetorical hyperbole [or] a vigorous epithet.'" <u>Crane-Hogan Structural Systems, Inc. v. Belding</u>, 38 N.Y.S.3d 489, 489 (N.Y. App. Div. 2016) (citations omitted).

25

Plaintiffs put forward two out-of-circuit state court cases to support the proposition that Defendant's statements are defamation *per se*, both of which are easily distinguishable on their facts. See Resp. at 22; see also Van Der Linden v. Khan, 535 S.W.3d 179, 187, 198 (Tex. App. 2017) (denying motion to dismiss in defamation suit flowing from the defendant's claim that the plaintiff is "a Muslim who has told [the defendant], PERSONALLY (not via hearsay) that he has given money to the Taliban" because the statement alleged the specific crime of providing financial support to designated terrorist groups); Grogan v. KOKH, LLC, 256 P.3d 1021, 1029 (Okla. Civ. App. 2011) (denying motion for summary judgment because television news program's discussion of the plaintiff after lead-in "on the heels of terrorist threats at local schools and a shooting at NIU" could be found to portray the plaintiff as being involved with specific terrorist threats). Unlike in Van Der Linden, Defendant did not specifically accuse Plaintiffs of working with named, designated terrorist groups. Unlike in Grogan, Defendant did not link Plaintiffs to specific terrorist threats from other groups or events like a local school shooting. These cases reflect the rule that a statement referring to potential criminal activity becomes defamation *per se* only when it suggests guilt or at least a charge related to a specific incident, rather than "rhetorical hyperbole." Belding, 38 N.Y.S.3d at 489.

Plaintiffs have not pled that Defendant referred to Plaintiffs in the context of comparable terrorist activity and specifically note that the "civil lawsuit contained no allegations of terrorism." Compl. ¶ 29. In the press conference, Defendant specifically noted that Red Rose Rescue had not been officially designated as a terrorist organization. See Mot. at 22 ("They *haven't been designated* as such. *I refer to them as terrorists because of their activities* . . .") (quoting Krasnokutski Ex. at 21:40). Defendant's statements are best understood as a colloquial use of the word "terrorist," rather than as an accusation of criminal conduct. See Lukashok, 554

N.Y.S.2d at 40. Considering Defendant's statements in context, the press conference did not accuse Plaintiffs of a serious crime.

Accordingly, the Court finds that Defendant's statements do not constitute defamation *per se*. Nevertheless, even if defamation *per se* was found, Plaintiffs' defamation claims would still fail because Defendant's statements are properly understood as an expression of opinion. See Thorsen, 966 F. Supp. 2d at 165 ("Nevertheless, as discussed *supra*, even if Plaintiffs were excused from pleading special damages under a defamation *per se* theory, Plaintiffs still have failed to allege an actionable defamatory statement. Accordingly . . . Plaintiffs' defamation *per se* claim is dismissed.").

In summary, Plaintiffs' defamation claims are dismissed for failure to state a claim upon which relief can be granted because the statements are best understood as non-actionable opinion, Plaintiffs have not alleged damages, and Plaintiffs have not alleged defamation *per se*.

## V.   CONCLUSION

Accordingly, it is hereby:

**ORDERED**, that Defendants' Motion to Dismiss, Dkt. No. 8, is **GRANTED**; and it is further

**ORDERED**, that Plaintiffs' Complaint, Dkt. No. 1, is **DISMISSED without prejudice** for lack of standing and for failure to state a claim; and it is further

**ORDERED**, that the Clerk of the Court close this action; and it is further

**ORDERED**, that the Clerk of the Court serve a copy of this Memorandum-Decision and Order on all parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

DATED:  September 27, 2024
     Albany, New York

LAWRENCE E. KAHN
United States District Judge